[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12587
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2005
THOMAS  K. KAHN
CLERK

D. C. Docket No. 03-01915-CV-T-17TBM

JOSEPH W. OLMSTEAD,

Plaintiff-Appellant,

versus

HUMANA, INC.,
HUMANA HEALTH CARE PLANS,
f.d.b.a. Humana Medical Plan, Inc.,
MENTAL HEALTH NETWORK,
JSA HEALTHCARE CORP.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 15, 2005)

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Joseph W. Olmstead appeals pro se the district court's order denying his pro se "verified amended motion for relief from order [denying Olmstead's motion for an order vacating his voluntary dismissal without prejudice of his civil action] and for appropriate relief with respect to protected personal and health information," filed pursuant to Fed.R.Civ.P. 60(b)(1) & (6). Olmstead argues on appeal that the court abused its discretion in denying this amended Rule 60(b) motion. For the reasons set forth more fully below, we affirm.

Olmstead sought reconsideration in the instant amended Rule 60(b) motion of the district court's order denying his motion for an order vacating his voluntary dismissal without prejudice of his civil complaint. In Olmstead's amended civil complaint ("Olmstead I"), he asserted that Humana, Inc. ("Humana"); Humana Healthcare Plans, f/d/b/a Humana Medical Plan, Inc. ("HMP"); Mental Health Network (MHNet"); and JSA Healthcare Corp ("JSA") (collectively referred to as "the defendants") violated multiple federal statutes and Florida common law, including the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Electronic Communications Privacy Act, 18 U.S.C. § 2701, et. seq.; the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Florida common law relating to invasion of privacy and negligence.

In support of this amended complaint, Olmstead alleged that, after he

2

enrolled in a health maintenance plan ("HMO"), which was operated by Humana and HMP, and after he selected JSA as his primary care physician, JSA refused to provide Olmstead with authorization to consult with a specialist. MHNet, in turn, caused a "false psychiatric record and related data and documents"—containing Olmstead's legally protected personal information—to be "created and disseminated." MHNet subsequently issued a "Member Notice," on behalf of HMP, with respect to a "Notice of Denial of Payment." Moreover, Olmstead alleged that this Member Notice unnecessarily disclosed to third parties false psychiatric-claim information and protected personal and identifying information.

Based on these allegations, Olmstead asserted that (1) MHNet intentionally exceeded legal access and accessed protected personal information stored in computer systems in the care, custody, and control of Humana and HMP, to obtain, utilize, and disseminate Olmstead's protected health information; (2) the policies and practices of the defendants, along with some of their acts, violated the ADA and Olmstead's rights as a disabled person, that is, a person with the physical impairment of Human Immunodeficiency Virus Disease ("HIV"), under the ADA; and (3) the defendants committed state common law invasion of privacy and negligence. Olmstead sought injunctive relief, as well as compensatory and punitive damages.

On November 24, 2003, the parties filed a joint case management report, whereby they agreed to a discovery schedule. After each defendant moved to dismiss Olmstead I, Olmstead filed notices of voluntary dismissal of some of its counts. Moreover, in January 2004, JSA and MHNet filed separate notices, informing the court that they had served proposals of settlement upon Olmstead during that same month. On January 26, 2004, Olmstead filed a notice of dismissal without prejudice of Olmstead I, pursuant to Fed.R.Civ.P. 41(a)(1),[1] without setting forth any reasons. On January 27, 2004, the district court ordered the clerk of the court to close the case and to terminate all pending motions.

However, on March 12, 2004, Olmstead filed a pro se "motion for entry of order vacating order granting voluntary dismissal without prejudice." Citing to Rule 60(b), Olmstead, at least indirectly, argued in this motion that he voluntarily had dismissed Olmstead I because the defendants had been "uncooperative" and had "caused unnecessary increased costs and delays" in responding to discovery requests. Olmstead also filed in support a lengthy declaration, outlining the procedural history of Olmstead I.

---

[1] Rule 41(a)(1) provides, in relevant part, that, subject to provisions of other rules, "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . Unless otherwise stated in the notice of dismissal . . ., the dismissal is without prejudice . . .." See Fed.R.Civ.P. 41(a)(1).

Humana and HMP responded, arguing that it was unclear from Olmstead's Rule 60(b) why he was seeking the vacation of the court's dismissal order, and that none of Rule 60(b)'s grounds for relief was applicable. MHNet and JSA also responded to Olmstead's Rule 60(b) motion in separate memoranda, both arguing that Rule 60(b) relief was not warranted because, if Olmstead truly had been dissatisfied with the defendants' discovery responses during the first months of discovery, he could have sought relief through a motion to compel, instead of filing a notice of dismissal. MHNet and JSA also contended that Olmstead's decision to dismiss Olmstead I, instead, was a "calculated strategic decision," following MHNet's filing its notice of settlement agreement.

On April 6, 2004, the district court denied Olmstead's Rule 60(b) motion, summarily explaining that there was no factual or legal basis under Rule 60(b) to grant it. On April 20, 2004, Olmstead filed a motion for reconsideration of this order, arguing that he had not filed his notice of dismissal to avoid any liability that could attach to rejecting the proposed settlement agreements, pursuant to Fed.R.Civ.P. 68.[2] Olmstead also contended that the court should reconsider its denial of his Rule 60(b) motion because, (1) although the dismissal was voluntary,

---

[2] Rule 68 provides, in relevant part, that "[i]f the judgment finally obtained by [a plaintiff] is not more favorable than the offer [made by a defendant], the [plaintiff] must pay the costs incurred after the making of the offer." See Fed.R.Civ.P. 68.

5

it was not "free, calculated, and deliberate"; and, (2) if the case was reinstated, discovery could be completed without significant prejudice to the defendants. After the defendants filed memoranda opposing Olmstead's motion to reconsider, the court summarily denied it. Although Olmstead filed a timely notice of appeal ("NOA") of the court's order denying his Rule 60(b) motion and his motion to reconsider, (R3-60), he subsequently obtained our leave to voluntarily dismiss this appeal, pursuant to Fed.R.App.P. 42.

As the defendants note on appeal, subsequent to the district court denying Olmstead's motion to reconsider, Olmstead filed on September 24, 2004, in the same district court, a second civil action against the same defendants ("Olmstead II"), which contained the same claims as set forth in Olmstead I. See United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:04cv2141-T27.[3] On the defendants' application, and pursuant to Fed.R.Civ.P. 41(d),[4] the court issued an order staying the proceedings in Olmstead

---

[3] The defendants have asked us to take judicial notice of pleadings and orders relating to Olmstead II. A court may take judicial notice of another court order, at least for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation. See Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995) (taking judicial notice that the district court denied a motion for summary judgment in another action). Thus, we take judicial notice of Olmstead II, at least to the extent that the district court has stayed proceedings pending Olmstead's payment of costs and fees relating to Olmstead I.

[4] Rule 41(d) provides that, "[i]f a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the

6

II, until Olmstead paid the attorney's fees and costs the defendants had incurred in defending Olmstead I. See id. On March 29, 2005, the court struck all pleadings Olmstead had attempted to file in Olmstead II, and reiterated that Olmstead II was stayed pending Olmstead's payment of fees and costs in Olmstead I. See id.

One week later, on April 6, 2005, Olmstead filed the instant amended Rule 60(b) motion,[5] contending that his original decision to seek a voluntary dismissal in January 2004, was "based upon personal considerations," that is, because he (1) did not have enough time to file the necessary paperwork to protect his privacy interests during the course of the litigation, and (2) first needed to "resolve the unexpected recurrence of an opportunistic infection ("OI") and onset of a new OI." Olmstead conceded that, when he made this decision, he was aware that he might be required to reimburse the defendants for some costs, but he claimed that he did not know that the defendants would be entitled to seek attorney's fees. Olmstead further asserted that, if he had known that he might be liable for attorney's fees, he, instead, would have moved the court to hold Olmstead I in abeyance to allow him time to protect both his health and privacy interests. In addition, Olmstead claimed that, contrary to the defendants' arguments, he did not dismiss his action to avoid

order." See Fed.R.Civ.P. 41(d).

[5] Olmstead explained in his amended Rule 60(b) motion that he amended his original Rule 60(b) motion, which he filed one day earlier, to correct clerical mistakes.

7

potential liability from rejecting the purported offers of judgment, and his claims in his amended complaint were not frivolous.

Based on these assertions, Olmstead concluded that "good cause" existed for the court to reconsider its April 6, 2004, order, denying his earlier Rule 60(b) motion to vacate the court's order granting his motion for a voluntary dismissal without prejudice, and to order the defendants to abstain from disclosing Olmstead's personal health information without first applying to the court for a qualified protective order. Olmstead also stated, without explaining, that he was relying on Rule 60(b)(1) and (6). One day later, without waiting for responses, the court summarily denied Olmstead's amended Rule 60(b) motion.

Olmstead argues on appeal that the district court abused its discretion in denying the instant amended Rule 60(b) motion because Olmstead submitted "sufficient information" to demonstrate "good cause for relief to be granted." Citing to non-binding caselaw, Olmstead generally asserts that a combination of health, privacy, and financial considerations was sufficient to permit relief under Rule 60(b)(6). Olmstead also contends that, to the extent the defendants argued in response to his first Rule 60(b) motion that he had voluntarily dismissed his civil action for the improper purpose of avoiding the potential effects of their offers of judgment, these offers were not rejected or filed in accordance with Rule 68, and,

8

thus, should not have resulted in Olmstead being liable for additional costs.[6]

As a preliminary matter, absent the filing of a timely NOA, we lack jurisdiction over an appeal. Wooden v. Board of Regents of University System of Georgia, 247 F.3d 1262, 1272 (11th Cir. 2001). Thus, as a federal court of limited jurisdiction, we must determine sua sponte whether we have jurisdiction. Id. at 1271. To the extent Olmstead filed the instant amended Rule 60(b) motion to extend the time he had for appealing the district court's April 6, 2004, order denying his first Rule 60(b) motion, he voluntarily dismissed his first appeal of the April 2004, order. In addition, the instant appeal falls well outside the 30 days permitted to file an appeal in a civil action. See Fed.R.App.P. 4(a)(1)(A) (a timely NOA in a civil case where the United States is not a party must be filed within 30 days after the judgment or order appealed from is entered).

We also have concluded that, because Fed.R.App.P. 4(a)(6)[7] is the exclusive

---

[6] Olmstead also requests in his appeal brief permission to supplement the record on appeal, explaining that he took "diligent good faith efforts with respect to supplementation of the record on appeal," and outlining related correspondence between himself and the defendants. Olmstead, however, has failed either to identify in his brief the documents or evidence that he wishes to add to the appellate record, or to explain why such supplementation is warranted. Thus, to the extent Olmstead is seeking to supplement the record on appeal, we deny this request. See Shahar v. Bowers, 120 F.3d 211, 212 (11th Cir. 1997) (en banc) (explaining that, although we have "inherent equitable power" to supplement the record with information not reviewed by the district court, "such authority is rarely exercised." (internal citation and marks omitted)).

[7] Rule 4(a)(6) provides that the district court "may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered," if certain conditions are met. See Fed.R.App.P. 4(a)(6).

9

means for extending the time to appeal, Rule 60(b) cannot be used to circumvent an untimely filing of an appeal. See Vencor Hospitals, Inc. v. Standard Life and Accident Ins. Co., 279 F.3d 1306, 1311 (11th Cir. 2002). Moreover, when a Rule 60(b) motion is filed more than ten calendar days after the entry of judgment—as in this case—that motion neither affects the finality of the underlying judgment nor tolls the time for appealing that decision. See American Bankers Ins. Co. of Fla. v. Northwestern Nat. Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999). Indeed, "the law is clear that Rule 60(b) may not be used to challenge mistakes of law [that] could have been raised on direct appeal." See id. Thus, our jurisdiction to review Olmstead's appeal of the instant amended Rule 60(b) motion is limited in scope to the denial of that motion.

We review a district court's order denying relief under Rule 60(b) only for abuse of discretion. Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003). Olmstead, without explaining, cited in support of the instant motion to Rule 60(b)(1) and Rule 60(b)(6). Under Rule 60(b)(1), a court may vacate a final judgment or order upon a showing of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). As explicitly stated in the rule, however, Rule 60(b)(1) motions must be filed, if at all, within a year of the order being entered. Turner v. Sec. of Air Force, 944 F.2d 804, 807 (11th Cir.

1991). Here, the district court entered its order dismissing Olmstead's civil action on January 27, 2004. Olmstead, however, did not file the instant amended Rule 60(b) motion until April 6, 2005. Thus, regardless of whether Olmstead proved "mistake, inadvertence, surprise, or excusable neglect," his motion was untimely to the extent he was relying on Rule 60(b)(1), and the court did not abuse its discretion in denying it. See Turner, 944 F.2d at 807.

To the extent Olmstead also was relying on Rule 60(b)(6), this "catch all" subsection provides that the court may relieve a party from a final order based on "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). A movant need not file a Rule 60(b)(6) motion within a year of the entry of the judgment, as long as the motion is filed within a "reasonable time." Id.; see also Damiano v. F.D.I.C., 104 F.3d 328, 332 n.4 (11th Cir. 1997) (Rule 60(b)(6) "has no strict time limitation of a jurisdictional nature"). This remedy, however, is intended "only for extraordinary circumstances." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000). Thus, "[the movant] must do more than show that a grant of its motion might have been warranted. [The movant] must demonstrate a justification for relief so compelling that the district court was required to grant [the] motion." Rice v. Ford Motor Co., 88 F.3d 914, 919 (11th Cir. 1996) (emphasis in original).

11

Assuming that Olmstead filed his amended Rule 60(b) motion within a "reasonable time," the defendants are arguing that Rule 60(b)(6) relief was not justified because Olmstead decided to file a notice of voluntary dismissal of his civil action to avoid the possible repercussions of his rejecting settlement offers made by the defendants. Moreover, they have cited as proof of this intent to the fact that Olmstead filed the instant Rule 60(b) action within a week of the district court's entry of its order restating that the proceedings in Olmstead II were stayed pending the payment of fees and costs Olmstead incurred by dismissing Olmstead I. Indeed, we concluded in Waddell that a district court did not abuse its discretion by denying relief under Rule 60(b)(3), when it was the plaintiffs' tactical decisions, instead of defendant's fraud, that had prevented the plaintiffs from fully presenting their case. See Waddell, 329 F.3d at 1310.

Nevertheless, we need not determine whether Olmstead's voluntary dismissal was motivated by this purpose. Even assuming as true Olmstead's argument that he acted based on "personal considerations," that is, he (1) did not have enough time to file the necessary paperwork to protect his privacy interests during the course of the litigation, and (2) first needed to "resolve the unexpected recurrence of an opportunistic infection ("OI") and onset of a new OI," he failed to present evidence showing, or even to explain, why he could not, instead, have

12

moved for a stay in the proceedings.[8]  Olmstead, thus, failed to show that these circumstances were "extraordinary."  See Toole, 235 F.3d at 1316.[9]

In addition, to the extent Olmstead has argued that the court abused its discretion in denying his Rule 60(b) motion because he was proceeding without counsel, a defendant's pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules.  See McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (explaining that the Court "never [had] suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel," because "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law"); see also Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999) (holding that liberal construction of the pleading requirements for pro se

---

[8]  To the extent Olmstead's appeal can be construed as again arguing that relief under Rule 60(b) was warranted because the defendants were uncooperative in responding to discovery requests, his remedy was to file a motion while Olmstead I was pending, seeking an order to compel or to impose sanctions.  See Devaney v. Continental Ins. Co., 989 F.2d 1154, 1159 (11th Cir. 1993) (explaining that Rule 37(b)(2) authorizes a court to impose sanctions upon a party or an attorney for failure to obey a court order to provide or permit discovery).

[9]  Olmstead has cited to Randall v. Merrill Lynch, 820 F.2d 1317 (D.C. Cir. 1987), in support of his argument that a combination of his health and financial considerations were sufficient to justifying Rule 60(b) relief.  However, in addition to constituting non-binding authority, the D.C. Circuit's holding in Randall involved a challenge to a district court's grant of Rule 60(b) relief, instead of an appeal of a denial of such relief.  See Randall, 820 F.2d at 1321. Indeed, the D.C. Circuit explained in Randall that "a trial court enjoys a large measure of discretion in deciding whether to grant or deny a Fed.R.Civ.P. 60(b) motion."  See id. at 1320.

13

litigants does not equate with liberal deadlines).  Moreover, relief cannot be granted under Rule 60(b)(6) if it could have been obtained under Rule 60(b)(1).  See Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1020 n.38 (11th Cir. 1982).  Olmstead, therefore, failed to cite to a justification for relief that was "so compelling that the district court was required to grant [the] motion," and the district court did abuse its discretion in denying relief under Rule 60(b)(6).  See Rice, 88 F.3d at 919.

Accordingly, we conclude that no basis for Rule 60(b) relief existed, and that the district court did not abuse its discretion in denying Olmstead's amended Rule 60(b) motion.  We, therefore, affirm.

**AFFIRMED.**